Michael S. Devorkin, Esq.
Dallas Albaugh, Esq.
Elizabeth A. Jaffe, Esq.
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
Phone: (212) 907-7300
Fax: (212) 754-0330
Email: mdevorkin@golenbock.com
Email: ejaffe@golenbock.com

**Hearing Date**: November 16, 2009
**Hearing Time**: 10:00 a.m.
**Hearing Location**: Courtroom 501
**Objection Deadline**: November 11, 2009 at 4:00 p.m.

*Counsel for Richard E. O'Connell, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| In re<br><br>ROBERT SHIVER,<br><br>    Debtor.<br>------------------------------------------------------------X<br>RICHARD E. O'CONNELL, as Chapter 7 Trustee of the Estate of Robert Shiver<br><br>    Plaintiff,<br><br>    v.<br><br>Cathryn Shiver, Brian P. Shiver, Douglas J. Shiver, Christopher R. Shiver, Aerwav Holdings, Inc., and Access 220, LLC<br><br>    Defendants.<br>------------------------------------------------------------X | Chapter 7<br>Case No. 07-11501<br><br><br><br><br>Adv. Pro. No. 08-01584 (MG) |

**MOTION FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT
PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B)(1) AND RULE 9019(A)
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO THE HONORABLE MARTIN GLENN,
UNITED STATE BANKRUPTCY JUDGE

*470682.3*

1.  On May 10, 2007 (the "Petition Date"), Robert Shiver (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2.  Richard E. O'Connell was appointed as the Chapter 7 Interim Trustee of the Debtor on May 17, 2007, accepted his appointment, duly qualified, and is acting as Chapter 7 Trustee (the "Trustee") of the Debtor.[1]

## JURISDICTION

3.  This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. § 1408 and 1409.

4.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 363(b)(1) and 105(a) and Rule 9019 of the Bankruptcy Rules.

## BACKGROUND

A.  **The Interpleader Action**

5.  On June 26, 2008, Access 220, LLC ("Access 220") and Access Spectrum, LLC ("Access Spectrum") (Access 220 and Access Spectrum are collectively "Access Plaintiffs") filed a Complaint (the "Complaint") in the District Court for the Southern District of New York (the "District Court") pursuant to 28 U.S.C. § 1335 commencing an Interpleader action (the "Interpleader Action") against, *inter alia*, all of the named defendants except Richard O'Connell, as Trustee for the Estate of Robert Shiver (the "Trustee"). The Complaint sought, *inter alia*, a determination by the Court of the defendants' respective rights to the proceeds ("Proceeds") of a Promissory Note executed by Access 220 (the "Note") and made payable to defendant Aerwav Holdings, Inc. ("Aerwav") (the Debtor is the sole officer and director of Aerwav and owns 100%

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings set forth in the Settlement Agreement. For the convenience of the Court, the section of the Settlement Agreement containing the definitions used therein and in this Motion is attached hereto as Appendix 1.

470682.3                                                      2

of the company's voting stock and 98-99% of its stock) and a discharge from liability arising out of the Note.

6. On or about July 10, 2008, Access 220 deposited with the Court Registry the sum of $3,478,824.00.

7. On August 13, 2008, the Access Plaintiffs filed an Amended Complaint naming the Trustee as a defendant in the Interpleader Action.

8. On September 23, 2008, the Trustee commenced the Adversary Proceeding against Access 220, Aerwav, Cathryn Shiver ("Cathryn"), Douglas Shiver ("Douglas"), Christopher Shiver ("Christopher") and Brian Shiver ("Brian"), alleging, *inter alia* that two amendments to the Note by Access Plaintiffs and Aerwav were fraudulent conveyances and that Access 220 owes additional amounts under the Note. The Trustee also alleged that the Debtor treated Aerwav as his alter ego. Cathryn, Douglas, Christopher and Brian collectively are referred to herein as the "Shiver Family." Douglas, Christopher and Brian collectively are referred to herein as the "Shiver Children."

9. On November 6, 2008, all of the parties to the Interpleader Action settled the Interpleader Action, except as to the Access Plaintiffs' claim for attorneys' fees.

**B.    The Interpleader Settlement**

10. On March 27, 2009, the remaining parties to the Interpleader Action entered into a settlement ("Interpleader Settlement"), which provided: (i) payment of $40,000 to Access 220 from the Proceeds, in full satisfaction of its motion for attorneys' fees in the Interpleader Action; (ii) payment of $16,510.80 to Aerwav's counsel from the Proceeds, in full satisfaction of all fees due to him for his representation of Aerwav in the Interpleader Action; (iii) upon payment by the Clerk of the above-noted sums, payment of the balance of the Proceeds, with interest, to the Trustee, to hold such funds in an interest bearing escrow account, pending the outcome of the

*470682.3*                                3

Adversary Proceeding or an order of a court of competent jurisdiction; (iv) upon entry of the Stipulation, release of Access 220 from all liability related to the Note; (v) dismissal of the Interpleader Action with prejudice and without costs or fees to any party, except for the fees awarded pursuant to the Stipulation; and (vi) upon payment of $90,000.00 from Access 220 to the Trustee, dismissal of Access 220 with prejudice from the Adversary Proceeding.

11. On May 19, 2009, the Bankruptcy Court entered an order pursuant to Bankruptcy Rule 9019 approving the Interpleader Settlement, which order is now final.

12. On June 4, 2009, the United States District Court for the Southern District of New York, entered an order pursuant to the Interpleader Settlement dismissing the remaining claims in the Interpleader Action and directing the clerk to pay from the Proceeds: (i) $40,000 to Access 220, (ii) $16,510.80 to Mark Risk, Esq., (iii) the balance of the Proceeds, with interest, to the Trustee in the amount of $3,275,313.20 to hold in escrow pending further order of the Bankruptcy Court (collectively "Escrowed Amount"). Such payments were made and received.

13. Upon approval of the Interpleader Settlement, Access 220 paid $90,000.00 to the Trustee. Such payment was made and received.

14. On June 18, 2009, the Bankruptcy Court entered an order dismissing the Adversary Proceeding as against Access 220 only.

C.  **The Settlement Agreement**

    (a)  **Payment to Aerwav Creditors, the Estate, Taxes and Cathryn**

15. The Trustee on the one hand and the Shiver Family, on the other hand, have reached agreement to resolve the remaining claims in the Adversary Proceeding. The Agreement is attached hereto as Exhibit A (the "Settlement Agreement"). The Settlement Agreement provides:

(i) The Trustee is holding in escrow the Escrowed Amount of $3,275,313.20, plus accrued interest.

(ii) There are the three creditors of Aerwav of which the Trustee is aware ("Aerwav Known Creditors"). The Aerwav Known Creditors have asserted claims against the Note Proceeds in the aggregate amount of $270,696.41 (the "Aerwav Gross Indebtedness").

(iii) The Trustee, upon notice and as detailed in the Motion for Entry of an Order Approving the Aerwav Known Creditor Settlements filed this day, has reached settlements with each of the Aerwav Known Creditors (the "Aerwav Known Creditor Settlements") whereby the aggregate amount of $168,260.00 will be paid to the Aerwav Known Creditors from the Escrowed Amount (the "Aerwav Known Creditor Settlement Amount").

(iv) The Aerwav Known Creditor Settlement Amount reduces the amount of the Aerwav Gross Indebtedness by $102,436.00. The Aerwav Known Creditor Settlements further release the Trustee, the Estate, the Debtor and Aerwav from any additional claims or demands.

(v) The alleged amount of any additional Aerwav creditor asserting a claim to the Escrowed Amount ("Aerwav Objecting Creditor") will be held in escrow pending a determination of the validity of such claim by an order of the Bankruptcy Court, which becomes a Final Order, as described in paragraph 18, below. Such amounts are referred to as the "Filed Aerwav Objecting Creditor Amount."

(vi) The Trustee will transfer from the Escrowed Amount the sum of $1,100,000 for the purpose of paying all taxes, penalties, and interest which the Trustee and Aerwav are required to pay in connection with the funds received from Access 220 on account of the Proceeds of the Note (the "Tax Escrow"). The Escrowed Amount less the Aerwav Gross

Known Indebtedness, the Filed Aerwav Objecting Creditor Amount (if any), and the Tax Escrow constitute the "Net Proceeds."

(vii)  The Trustee, on behalf of the Estate, and Cathryn each is entitled to 50% of the Net Proceeds and 50% of all amounts remaining in the Tax Escrow after payment of all taxes, penalties and interest due from the Estate or Aerwav.

(viii)  The Trustee, on behalf of the Estate, is also entitled to retain for the Estate from the Escrowed Amount 75% of the difference between the Aerwav Gross Known Indebtedness and the Aerwav Known Creditor Settlement Amount, which is $76,872.30.

(ix)  Cathryn is entitled to 25% of the difference between the Aerwav Gross Known Indebtedness and the Aerwav Known Creditor Settlement Amount, which is $25,624.10.

(b)    **Procedures for Implementing Payments**

16.   In order to implement the payment provisions, the Settlement Agreement provides a process and timing for making these payments.

17.   In accordance with applicable Bankruptcy Rules, Notice of this Motion ("Notice") will be provided to all creditors and parties in interest in the Bankruptcy case, all known creditors (whether contingent, liquidated or disputed) and shareholders, if any, of Aerwav, and by notice by publication, pursuant to an Order of the Bankruptcy Court dated October 12, 2009, to others who might be creditors of Aerwav or otherwise have objections to the Settlement Agreement.

18.   If any person or creditor objects to the distributions provided for in the Settlement Agreement, that person or creditor must, upon receipt of Notice, file an objection with the Bankruptcy Court no later than 3 days before the hearing on the Motion (as modified by Stipulation dated October 15, 2009). The objection must set forth the amount of any claim to the

Escrowed Funds asserted by the Aerwav Objecting Creditor, the basis for the objection, and any back-up documentation supporting the claim.

19.     Within one (1) day of receipt of a copy of any alleged claim of an Aerwav Objecting Creditor (as modified by Stipulation dated October 15, 2009), the Trustee and/or Cathryn or the Shiver Children or any interested party must file an objection to the Aerwav Objecting Creditor's claim or waive such claim.

20.     The alleged amount of an Aerwav Objecting creditor's claim against Aerwav will be held in escrow pending a determination of the validity of such claim by an order of the Bankruptcy Court which becomes a Final Order.

21.     Within 10 days of each Order resolving the validity or amount of an Aerwav Objecting Creditor's Claim (other than the claim of an Aerwav Known Creditor) becoming a Final Order, the Trustee will pay: (i) the amount due and payable to such Aerwav Objecting Creditor pursuant to such Final Order (the "Fixed Aerwav Objecting Creditor Amount"); and (ii) to "Crowell & Moring LLP as attorneys for Cathryn Shiver" an amount equal to 50% of the difference between the Filed Aerwav Additional Creditor Amount and the Fixed Aerwav Objecting Creditor Amount.

22.     The Trustee already has entered into settlement agreements with the Aerwav Known Creditors. These agreements are subject to a separate Motion for Entry of An Order Approving the Aerwav Known Creditor Settlements, which was filed this day.

23.     Within 10 days of each order approving the settlement with an Aerwav Known Creditor becoming a Final Order, the Trustee will: (i) deliver by check drawn from the Trustee's account payable to "Crowell & Moring as Attorneys for Cathryn Shiver" 25 percent of the difference between the Aerwav Gross Known Indebtedness and the Aerwav Known Creditor

Settlement Amount; and (ii) release to the Trustee 75 perecent of the difference between the Aerwav Gross Known Indebtedness and the Aerwav Known Creditor Settlement Amount.

24. Within 15 days after the Approval Order becomes a Final Order, the Trustee will (a) pay 50% of the Net Proceeds to "Crowell & Moring as attorneys for Cathryn Shiver," and (b) release the remaining 50% of the Net Proceeds to the Trustee, except for (i) the amount, if any, that is held in escrow for the payment of any Filed Aerwav Objecting Creditor Amount (ii) the amount of any settlement with an Aerwav Known Creditor that has not been approved in a Final Order.

25. Within 15 days of a Final Order of the Bankruptcy Court directing payment of all taxes, interest and penalties which the Trustee or Aerwav is required to pay in connection with the funds received from Access 220 on account of the Proceeds of the Note (the "Taxes") (taking into account an offset for the basis of the stock in Aerwav and any available capital loss carryforwards, deductions for administration expenses or legal fees, tax credits or tax attributes), the Trustee will pay the Taxes from the Tax Escrow.

26. Within 10 business days of the payment of the aforementioned taxes, the Trustee will: (a) pay 50% of remaining balance in the Tax Escrow to "Crowell & Moring as attorneys for Cathryn Shiver," and (b) release the remaining 50% of any funds remaining in the Tax Escrow to the Trustee.

27. Any tax refund thereafter received in connection with, or attributable to, the payment of taxes relating to the funds received from Access 220 on account of the Proceeds of the Notes will be shared evenly (50%-50%) between the Trustee and Cathryn Shiver.

28. In the event that the taxes that are owed by the Trustee or Aerwav in connection with the funds received on account of the Proceeds of the Note exceed the Tax Escrow, then the

Trustee and Cathryn Shiver will each be responsible for the payment of 50% of such additional taxes owed in excess of the Tax Escrow.

### (c) Miscellaneous Provisions

29. Within 10 days of any written request by or on behalf of, Cathryn Shiver, the Trustee shall provide Cathryn Shiver with: (i) a copy of any and all tax returns reflecting or relating in any way to taxes paid from the Tax Escrow; (ii) the back-up documentation relied upon in preparing any such tax return; and (iii) an accounting if the disbursement made from the Tax Escrow.

30. All payments to Cathryn hereunder are intended to relate to the cessation of her marriage to the Debtor as described in Internal Revenue Code § 1041.

31. The Trustee will not file, or join in, any objection to the Cathryn Shiver Claim. Cathryn waives any and all distribution on the Cathryn Shiver Claim.

32. The Trustee will not oppose any application by Cathryn to establish the Cathryn Shiver Claim as a non-dischargeable obligation of the Debtor to the fullest extent permitted by § 523 of the Bankruptcy Code.

33. The Trustee shall not file or join in any objection to the Shiver Children Claim. The Shiver Children agree to waive distribution on the Shiver Children Claim to the extent such claim exceeds $250,000, so long as the Approval Order provides that the Shiver Children shall be entitled to receive a distribution on a $250,000 general unsecured claim in the Debtor's bankruptcy case. If the Approval Order does not provide that the Shiver Children are entitled to a distribution on a $250,000 general unsecured claim, then the Shiver Children shall have the right to terminate this Settlement Agreement (the "Termination Option"). If the Shiver Children exercise the Termination Option, then this Settlement Agreement shall be null and void in its

entirety, and the Trustee and the Shiver Family shall be returned to their respective positions, as existed just prior to their entry into the Settlement Agreement.

34. Upon entry of an Approval Order which becomes a Final Order, the claims in the Adversary Proceeding against Aerwav Holdings, Inc. shall be dismissed with prejudice.

35. Upon entry of an Approval Order, which becomes a Final Order, the claims in the Adversary Proceeding against the Shiver Family shall be dismissed with prejudice.

36. Effective upon filing of a Stipulation of Dismissal in this Adversary Proceeding, the Trustee shall release and forever discharge the Shiver Family from any and all Claims including but not limited to any and all (i) Claims related to the Note, the Note Amendments or the Proceeds, (ii) Claims asserted or capable of being asserted in the Interpleader Action or the Adversary Proceeding, and (iii) Claims arising under chapter 5 of the Bankruptcy Code.

37. Effective upon filing of a Stipulation of Dismissal in the Adversary Proceeding, the Shiver Family shall release and forever discharge the Trustee from any and all Claims including but not limited to any and all (i) Claims related to the Note, the Note Amendments or the Proceeds, (ii) Claims asserted or capable of being asserted in the Interpleader Action or the Adversary Proceeding, and (iii) Claims arising under chapter 5 of the Bankruptcy Code; and (iv) any claim that could arise or related to the cessation of Cathryn's marriage to the Debtor as described in Internal Revenue Code § 1041.

38. Effective upon filing of a Stipulation of Dismissal in the Adversary Proceeding, the Parties to the Adversary Proceeding shall release and discharge all of the Parties to the Adversary Proceeding with respect to all payments authorized by the Bankruptcy Court pursuant to this Settlement Agreement.

39. Nothing in the Settlement Agreement, including the releases contained herein, shall constitute a release of any Claims that (i) the Trustee, acting on behalf of the Debtor and his estate, or (ii) the Shiver Family may have against persons or entities that are not parties to the Settlement Agreement, including without limitation any claim against the Debtor under § 523 of the Bankruptcy Code.

**(d)    Effects of the Settlement Agreement**

40. Upon approval of the Settlement Agreement and the Aerwav Settlement Agreements, the Trustee will take the following actions:

41. The Trustee will pay from the Escrowed Amount $1.1 million into the Tax Escrow, and $168,260.00 to the Aerwav Known Creditors, leaving a balance of $1,904,616.79. From the balance of $1,904,616.79, the Trustee and Cathryn, each, will receive $952,308.39. These are subject to any deduction for an Aerwav Objecting Creditor Amount, which is not yet determined.

42. The difference between the Aerwav Gross Known Indebtedness, $270,696.41, and the Aerwav Known Creditor Amount, $168,200.00, is $102,436.41. The Trustee will pay $76,872.30 to the Estate and $25,624.10 to Cathryn.

43. After paying all Aerwav Known Creditors, there will remain approximately $3 million in the Escrowed Amount. From this amount, the Trustee will pay Aerwav Objecting Creditors' Amounts, if any, that have been determined to be valid by an order of the Bankruptcy Court, which becomes a Final Order. The remaining amount of approximately $3 million must be treated as a liquidating dividend by Aerwav to the Debtor, from which all remaining payments hereunder are made.

44. The Debtor must also pay capital gains tax on the liquidating dividends of $3 million. Based on a liquidating dividend of $3 million, for illustration purposes, the capital gains tax is estimated as follows: capital gains tax is paid on approximately $3 million less $600,000 for the Debtor's basis in Aerwav, less the Estate's administrative fees approved by the Bankruptcy Court. The Trustee estimates that the combined federal, state and city taxes will be no less than $395,000, excluding any penalties and interest which may be due.

45. At this time, the Trustee does not anticipate that Aerwav owes taxes, penalties or interest.

46. After payment of all taxes and interest from the Tax Escrow, the Trustee estimates that there will be a balance of as much as $700,000.00 in the Tax Escrow. The Trustee will pay 50% to Cathryn and 50% to the Estate. If this assumption is correct, the Estate may receive up to $350,000.00 additional monies, adding to the total for the Estate.

47. These amounts are only estimates.

## LEGAL BASIS FOR THE RELIEF REQUESTED

### A. Legal Standard

48. The Trustee requests approval of the Settlement pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

49. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). In practice, section 105(a) of the Bankruptcy Code grants bankruptcy courts broad statutory authority to enforce the Bankruptcy Code's provisions either under the specific statutory language of the Bankruptcy Code or under equitable common law doctrines. *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[i]t is well settled that bankruptcy courts are courts of equity,

empowered to invoke equitable principles to achieve fairness and justice in the reorganization process").

50. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part: "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Second Circuit, in examining section 363(b)(1) of the Bankruptcy Code, have required that a transaction involving property of the estate be based upon the sound business judgment of the debtor or trustee. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). The Trustee seeks approval of his exercise of voting rights in Aerwav pursuant to section 363(b) of the Bankruptcy Code.

51. Bankruptcy Rule 9019, which governs approval of compromises and settlements and provides, in pertinent part:

52. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct. Fed. R. Bankr. P. 9019(a).

53. Approval of a proposed compromise or settlement is within the sound discretion of the Court. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, reh'g denied, 391 U.S. 909 (1968); *In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir. 1983), cert. denied sub nom., *Cosoff v. Rodman*, 464 U.S. 822 (1983); *Fischer v. Pereira (In re 47-49 Charles St. Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997). Among other things, "in making

such a determination, the bankruptcy court should appraise itself 'of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated' and should review 'all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *In re Enron Corp.*, No. 02 Civ. 8489 (AKH), 2003 WL 230838, at *2 (S.D.N.Y. Jan. 31, 2003) (quoting *Protective Comm. For Indep. Stockholders*, 390 U.S. at 424-25).

54. In determining whether to approve a proposed compromise or settlement, a court must consider all factors relevant to a "full assessment of the wisdom of the proposed compromise." *In re Purofied Down Prods.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). These factors include:

  a. The balance between the likelihood of the plaintiff's or the defendant's success should the case go to trial as compared with the benefits of the settlement without the expense and delay of a trial;

  b. The prospect of a complex and protracted litigation if the settlement is not approved;

  c. The proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

  d. The proposed benefits to be received;

  e. The nature and breadth of releases to be issued as a result of the settlement; and

  f. The extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion.

*In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

55. The Court should also consider additional factors such as weighing the informed judgments of the trustee and considering the competency and experience of counsel. *In re Drexel Burnham Lambert*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (*citing In re Carla*

*Leather, Inc.*, 44 B.R. 457 (Bankr. S.D.N.Y. 1984); *In re Texaco, Inc.*, 84 B.R. 893 (Bankr. S.D.N.Y. 1988)) (additional citation omitted).

57. However, in determining whether to approve a proposed compromise or settlement, the Bankruptcy Court need not decide the numerous issues of law and fact raised by the compromise or settlement but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). *See Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (emphasizing that "the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation").

## B. Discussion

57. The terms of the Settlement Agreement meet the criteria of Bankruptcy Code section 363(b)(1) and Bankruptcy Rule 9019. As is set forth in the Declaration (the "Declaration") of the Trustee dated October 16, 2009, attached hereto as Exhibit B, the Settlement is the product of good faith arm's length bargaining among the Trustee, Cathryn, Douglas, Brian, and Christopher.

58. The Trustee concluded that the settlement is in the best interests of the Debtor's estate because of the very substantial legal fees and costs of expert witnesses necessary for the continued investigation and prosecution of claims against Cathryn, Douglas, Brian and Christopher by the Trustee in the Adversary Proceeding, due to the complexity of the factual and issues, as described more fully below. Moreover, the likelihood of ultimate success on the merits cannot be predicted with certainty. The Trustee concluded that the certainty of the retention of more than $1,000,000 for the estate as a result of settlement outweighed the cost and risk of continuing the litigation against Cathryn, Douglas, Brian and Christopher.

*The Marital Property Agreement*

59. On or about August 27, 2002, Access 220, as Maker, executed the Note in the principal sum of $4,478,824.00 to defendant Aerwav, as Payee. The Note was issued as part of the purchase price for the acquisition of certain assets from Aerwav and a related entity, Aerwav Spectrum Holdings, Inc., including but not limited to certain spectrum band licenses. The Note was amended twice prior to its maturity in or about the first half of 2008, when Access 220 consummated a transaction that triggered its maturity date.

60. On February 22, 2006, Cathryn and the Debtor were divorced pursuant to a Final Judgment of Divorce (the "Final Judgment") entered in *Robert Shiver v. Cathryn Shiver*, Superior Court of New Jersey, Chancery Division - Family Part, Docket No. FM-14-1305-04 (the "Divorce Action").

61. On or about April 10, 2006, pursuant to the Final Judgment, Cathryn and the Debtor entered into a written property settlement agreement (the "Marital Property Settlement Agreement").

62. The Court approved the Marital Property Settlement Agreement pursuant to a Supplemental Final Judgment of Divorce entered in the Divorce Action on April 10, 2006.

63. Pursuant to the terms of the Marital Property Settlement Agreement, the Debtor purported to assign and transfer his interest in the Note or in distribution to Aerwav of the proceeds received by Aerwav pursuant to the Note, to or for the benefit of Cathryn, Christopher, Douglas, and Brian. Debtor was the sole officer and director of Aerwav at all relevant times and owned 100 percent of the voting class of stock of Aerwav and not less than 98 to 99 percent of the common stock of Aerwav on a fully diluted basis.

64. In pertinent part, the Marital Property Settlement Agreement provides that:

> [Cathryn Shiver] shall immediately by assigned 50% of the
> proceeds to be received from a promissory note dated August 27,

470682.3                                                    16

2002, and amended in January 2004 and October 2005, issued by Access 220 to Aerwav Holdings, Inc. (the "Access 220 Note") as part of her Equitable Distribution award. [Cathryn Shiver] shall be entitled to receive a net payment after tax of $1,739,412 from the Access 220 Note (representing 50% of its present face value) when the Note becomes due in February, 2012, or 50% of the gross proceeds actually paid on the Note. To effectuate [Cathryn Shiver's] receipt of her payment pursuant to this paragraph, [Debtor] hereby directs [Aerwav] to pay over to [Cathryn Shiver] all sums due her under this paragraph and [the Debtor] has executed an Assignment to [Cathryn Shiver] of his interest in any distribution from [Aerwav] of proceeds received by [Aerwav] under the Access 220 Note. All payments to [Cathryn Shiver] . . . shall be net payments after tax, provided that [Aerwav's] net operating losses exceed the proceeds paid to [Aerwav] under the Access 220 Note.

[The Debtor and Cathryn Shiver] agree that [the Debtor] shall take not steps to reduce the net operating losses of [Aerwav] that would not otherwise expire before 2012 pending full distribution of the proceeds of the Access 220 Note. The maker of the Access 220 Note will be notified and acknowledge receipt of said notice of assignment that the note has been assigned to the children and [Cathryn Shiver,] and that they need their consent to agree to any further modifications or amendments to the Note.

[The Debtor and Cathryn Shiver] agree any and all liens and other liabilities against the proceeds to be paid to [Aerwav] under the Access 220 Note shall be paid form the 50% of the Access 220 Note not payable to the Wife . . . and that the remaining balance of the proceeds received by [Aerwav] after payment of any lines [sic] or other liabilities against the Access 220 Note shall be paid to a trust to be formed by [the Debtor] for the benefit of [his children. The Debtor] hereby directs [Aerwav] to make the payments as directed . . . and has executed an Assignment of his interest in the distribution to [Aerwav] of the proceeds received by [Aerwav] pursuant to the Access 220 Note.

[The Debtor and Cathryn Shiver] agree that the Access 220 Note shall be held by a mutually agreed upon escrow agent pending full distribution of the proceeds as detailed [in the Property Settlement Agreement], and that neither [the Debtor nor Cathryn Shiver] shall engage in any transaction outside of [the Property Settlement Agreement] that would in any way assign, encumber, or reduce the value to [Aerwav] of the Access 220 Note. [Cathryn Shiver] will be free to designate who the escrow agent will be to have custody of the Note.

### *The Parties' Contentions*

65.  The Trustee contends, *inter alia*, that the Note belonged to Aerwav and not the Debtor, and that Shiver did not and could not assign the Note or the Proceeds to either Cathryn or Brian, Douglas and Christopher, and that any such purported assignment was fraudulent as to Aerwav's creditors and Shiver's creditors. The Trustee further contends that, under applicable bankruptcy and state domestic relations and fraudulent conveyance law, that Shiver was insolvent at the time of the Marital Property Settlement, that there were no marital assets to be distributed, and that the marital distribution of Shiver's assets, including the purported assignment of Note Proceeds, was improper because it did not involve reasonably equivalent value. The Trustee contends that the Marital Property Settlement is not binding on the Estate because it was fraudulent, not at arms length, and not the subject of actual litigation of the issues or a judicial decision on the merits.

66.  The Shiver Family contends, *inter alia*, that the Debtor was solvent in 2006 when Shiver and Cathryn entered into the Marital Property Settlement pursuant to which assets, including the purported assignment of Note Proceeds, were transferred to the Shiver Family, and that the Marital Property Settlement was not a transfer but a distribution of marital assets in which Cathryn had an existing interest, including as a result of substantial sums of money owed to Catherine and the Shiver Children in support payments ordered by the court in the Divorce Action. The Shiver Family further contends that the Marital Property Settlement was an arms length, good faith transaction, and a fair and equal distribution of assets or an exchange of reasonably equivalent value, and that the judgment by a state court approving and enforcing it is valid on its face and binding on this Court.

67.  The issues presented in this case involve application and interpretation of complicated bankruptcy law, domestic relations law, and choice of law issues. Further,

additional and substantial discovery and the retention of consultants and testifying experts would likely be necessary if the case were pursued through trial.

68.  Taking into account the difficulty of proving the parties' respective claims, the additional amount of substantial discovery required, the length of time and resources that the Trustee would need to devote to resolution of the claims against the Shiver Family, and the uncertainty of the outcome of a trial of these claims, the benefit of settling these claims outweighs the expense and delay of a trial.

69.  In an effort to recover funds for the benefit of the Debtor's estate without the costs and risks attendant to litigating against the Shiver Family in the Adversary Proceeding, the Trustee entered into arms' length, protracted settlement discussions with the Cathryn and the Shiver Children, each of which was represented by separate counsel. The Settlement Agreement provides as follows:  (i) payment of all creditors of Aerwav from the Escrowed Amount and a process for doing so;  (ii) payment of all taxes, interest, and penalties, if any, owed by Aerwav and the Debtor from the Escrowed Amount, and for an escrow of $1.1 million to ensure that is accomplished;  (iii) after these payments are made, payment to the Trustee of a little more than 50% of the balance and to Cathryn of a little less than 50% of the balance (the Trustee's share is expected to be more than $1 million);  (iv) equal liability by the Trustee and Cathryn for any additional taxes and equal sharing by them of any tax refunds; and (v) no distribution to Cathryn from the Estate, and distribution to the Shiver Children only on a $250,000 unsecured claim. The Settlement therefore eliminates the risk that, in litigation, the Shiver Family could recover the full amount of the Note, which is the primary asset of the Debtor, which would result in little if any distribution to creditors.

70. Finally, the releases provided for in the Settlement are reasonable and limited to claims relating solely to the Settling Parties.

71. The Trustee respectfully submits that the Settlement represents a fair and equitable compromise, a sound exercise of his business judgment and a decision that is in the best interest of the Debtor's estate and creditors. Accordingly, the Trustee respectfully submits that the Court should approve the Motion.

## NOTICE

72. Pursuant to Bankruptcy Rule 2002(a) the Trustee is serving Notice of the Motion upon: (i) the United States Trustee; (ii) the Debtor; (iii) Cathryn Shiver; (iv) Douglas Shiver; (v) Christopher Shiver; (vi) Brian Shiver; (vii) Aerwav; (viii) the Debtor's creditors, (ix) all known creditors (whether contingent, unliquidated or disputed) and shareholders of Aerwav, and parties, if any, that have filed a Notice of Appearance in the Debtor's Chapter 7 case; and (x) by publication of the Notice. The Trustee submits that, under the circumstances, such service is good and sufficient notice, as required by Bankruptcy Rule 2002 and Local Rules 2002-1 and 9013-1(c).

73. No previous motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, The Trustee respectfully requests that the Court issue an Order, in the proposed form annexed hereto, (i) granting the Motion, and (ii) granting such further and other relief as the Court deems just and proper.

Dated: New York, New York  
       October 19, 2009

GOLENBOCK EISEMAN ASSOR BELL  
& PESKOE LLP  
437 Madison Avenue  
New York, New York 10022  
(212) 907-7300

By: /s/ Michael S. Devorkin  
     Michael S. Devorkin, Esq.  
     Elizabeth A. Jaffe, Esq.